Morning, Counsel. Good morning. Thank you, Your Honors. May it please the Court. I'm David Salmons on behalf of the John Hancock defendants. I will be speaking for all defendants today. If it pleases the Court, I'll start by addressing the certification question posed by the Court's most recent order and then move on to a discussion of the key legal errors committed by the District Court. The certification order from this Court referenced two legal issues, each tied to a section of the Washington Farm Labor Contractors Act. The first, section 19.30.10, involves the definition of farm labor contractor. The second, section 19.30.200, involves the requirement that there be knowing use of an unlicensed contractor. The District Court's interpretation of each section represents an unprecedented extension of the statute. Counsel, could you help me on another aspect of certification? It's discretionary. And one thing that I always think about, well, here's some of the things I always think about when we're deciding whether to certify and I need you to address them. One is, it's expensive and it takes a lot of time. So there's a presumption against certification if it's not really important to do it. It uses a lot of the lawyer's time and a lot of their client's money and it delays resolution of the case for maybe a year. On the other hand, this case, it looks like it's all Washington state law, not federal law. And what the Washington Supreme Court does is act conclusive and it's a pretty important question as affects the economy of rural Washington. And the agriculture business in Washington. Considering those things, is it a good idea to certify or a bad idea to certify? Thank you, Your Honor, for that question. And this is exactly where I wanted to go. So defendants submit that this court has ample grounds to reverse the District Court on either or both of its unprecedented holdings without the need for certification. And we think among the factors that Your Honor just identified, including the time and the cost and the like, as well as the fact that we think these matters can be resolved by traditional statutory construction, that the court can reverse without certification. On the cost factor here, it looked like everybody on both sides had plenty of money to deal with it. I'm not sure that's true. I mean, this has been expensive litigation and there's a strong interest on the part of the parties for resolution. Isn't it a bunch of institutional investors that own the farms? And let's see, I can't remember. That's correct, Your Honor. The John Hancock companies own the farms. Farmland is the lessee and the Northwest is the agricultural employer or farmer in this case. The point I would make is this. Given how much of a judicial reach it was, the extension of the statute by the District Court below. Remember, this is not a new statute. This has been around for decades and decades. And there has never been an application, a licensing requirement imposed on a farmer hiring agricultural workers for its own farming operations in the history of the statute. Given that reach, if the court has doubts about whether or not it can reverse, it should certify. Because if there's going to be a judicial extension of this statute, we would submit it ought to be from the state court for the reasons Judge Kleinfeld, you just mentioned. But we think the court need not do so and can reverse in this case based on a straightforward construction of the statute, taking into account its text and its structure and its history. And let me start with... Well, I think it primarily applied the text of the statute, Your Honor. It was also dealing primarily with questions of the remedies available, not the scope of the conduct. And for reasons I'll get into in just a moment, I think that's very significant. Because one of the things I think that bears emphasis in this case is this is not a statute that just provides for civil penalties or damages if you were statutory damages. This is a criminal statute as well. Subsection 150 of the statute makes clear that anyone who violates any provision of this chapter shall be guilty of a misdemeanor punishable by a fine of not more than $5,000 or imprisonment in the county jail for not more than six months. So there's liberty at issue in these interpretations. And any ambiguity or doubt with regard to these constructions has to be construed narrowly in light of the rule of lenity, which the state of Washington applies just like the federal courts apply. And so for the reasons I'll walk through, we think there's not ambiguity. We think this language is clear. The term contractor and contracting that's used in the definition of farm labor contractor necessarily connotes that you're providing services or products for another person. It strains the normal usage, either ordinary usage or trade usage, to refer to a farmer hiring employees, agricultural workers, only for its own farming operations. To say that it's acting as a labor contractor and hiring its own employees. And again, that has never been applied before. And then you look at the one part of the Perez Furrious case that I think is very telling for this case is that the court there made absolutely clear, and this is a quote, farmers secure workers as a regular practice, farmers secure workers through the services of farm labor contractors. You've got farmers, you've got workers, and you've got farm labor contractors who act as intermediary between farm workers and farmer. The only farmer in this case that's been identified is Northwest. With the fact that Washington has interpreted fee fairly broadly, is any valuable consideration, right? Wasn't there valuable consideration in this case? Well, I do think that if you look at the language of the definition of fee, it is broad. There's no doubt about that. But I think you have to start with the definition of contractor and take into account that that inherently refers to an intermediary role. So if you look at the definition of fee, Your Honor. Well, a contractor is one who for a fee performs farm labor contracting activity, right? Farm labor contracting activity includes the conduct that was engaged in here. Well, that's where we disagree, Your Honor, because it certainly includes recruiting, soliciting, employing, supplying, transporting, or hiring. Here, what was engaged in was employing and hiring. But it was not as a contractor. It was for their own farm operations. Does it matter that the basis of the fee, and is there a case that says that it matters, that the basis of the fee here was per acre farmed rather than per capita for persons hired? I do think that it matters. I think that's one way in which the court could approach the question. Let me turn to the definition of fee just so we're all on the same page. And I look at that and it says recruiting, soliciting, employing, and so forth. Employees. It doesn't say farming. That's correct, and that's important. Is there a case that supports your side of that distinction? I'm not aware of a case that, here's the challenge that I have, Your Honor, is that no one has ever presented this theory before. They certainly have never presented it in state court. It was raised, as far as I can tell, for the first time in this federal court action. We didn't remove the federal court. The plaintiffs brought this case in federal court. Presumably they wanted the federal forum precisely because of the fact, I would suggest, that this is a very unprecedented theory they're pushing. So I don't have a case that says that a farmer who's hiring only for their own operations and has paid a fee for their farming services is not receiving a fee for the contracting services. Am I remembering correctly that the fee is a per acre fee? That's correct. It's completely unrelated to whether workers are hired, how many workers are hired, who hires them. It's not tied to that at all. But it's anticipated that you don't get the per acre fee unless you use the acres for farming. There's no doubt that farming is a labor-intensive activity and that the owner and lessee of the land here anticipated that the farmer, Northwest, would be hiring farm workers. And it did for its own farm operations, which does not make it a contractor, which necessarily suggests this intermediary role. That's what the text suggests with the term contractor and contracting. That's what the state Supreme Court and Perez-Farias makes clear when it says these are intermediaries. That's the entire history of this state law, which is based on the federal statute. If you look to this court's decision in the Mendoza case that we cite involving the federal statute, it walks through a group that's very similarly situated. These were a vineyard management company. And now it's dealing with the federal statute, not the state statute. But it walks through the policy and the reasons why. No one anticipated that farmers hiring for their own farm operations would be subject to this licensing requirement. And the text doesn't support it. The history doesn't support it. And the Supreme Court's decision in Perez-Farias doesn't. Was it anticipated, though, that you'd have the landowner really not engaged in the farming? This is not unusual, Your Honor. This is how probably half of the farming in Washington gets done. This is a very significant chunk of the farming operations, not just in Washington, throughout the country. The land is often owned by others, and you have farmers who farm for a fee. They farm for a fee. They don't necessarily hire agricultural workers for a fee. And that's where it becomes difficult. I kind of agree with you that the normal notion of contractor is someone who is the intermediary. But I also think there's some sort of normal notion of farmer that that is the landowner. No, I disagree with that. In fact, Your Honor, let's turn to this. This is a statutorily defined term. And I think this really will hopefully help resolve that concern for you. If you look at 19.30.10 subsection 4, it says agricultural employer means any person engaged in agricultural activity, including the growing, producing, or harvesting of farm or nursery products. And then it goes on to talk about the different types of activities. Nowhere is there any mention of owning the land that's being farmed. Farmers are tenant farmers, aren't they? Very frequently, Your Honor. Very frequently. And if the legislature wanted to have a different rule, and let's be clear, this is exactly what the plaintiff's rule is. In this case, are they tenant farmers? They are one of the largest farmers in the state. Tenant farmer doesn't necessarily mean... And they are tied to the land. They farm the same land over and over and over again. Tenant farmer doesn't have to be a poor man in Alabama. That's my only hesitation. But yes, in that sense, I think yes, absolutely. They're tenant farmers. They farm this land. They're tied to the land, which is why the licensing concerns for these itinerant, hard to track down... Let me give you a hypothetical. Yes, sir. Under the contracts that they have with the owners, I think it was a union pension fund and some insurance companies and whatnot that were the actual owners of the farms, they had a per acre fee. And I was thinking farming's been getting so much more automated during my lifetime. Suppose you were clever enough to figure out a way you could avoid all the trouble of labor laws by picking a particular crop where you could have an entirely mechanized farming operation, no employees at all. Would they still be able to collect their per acre fee for farming it? Absolutely. Absolutely. That was the nature of the agreements here. And all of those decisions, who to hire, when to hire, how to hire, were all made only by Northwest. Neither Farmland nor Hancock had any right to dictate those terms. And there's really no dispute about this. The district court itself made absolutely clear, Northwest is the only farmer here. There's no determination that Hancock or Farmland were an agricultural employer. And if the legislature wanted to have this sharp line, under the plaintiff's rule and the district court's rule, you're going to have one rule for farmers who own the land and one rule for farmers who do not. And if that had been intended by the legislature, you would expect to see it right here in the definition of agricultural employer. It makes no sense and it does not exist. Let me just close on this point, on this topic, unless the court has questions, with this point about the fee. And I want to be clear what we're dealing with here in terms of the arguments in the statutory language. The reliance primarily is on subsection A of subsection 7 of the definition section here, 19.30.10. It defines fee in subsection A as any money or other valuable consideration paid or promised to be paid for services rendered or to be rendered by a farm labor contractor. What the district court said here, and I think the plaintiff's primary argument is, follow the money. These people got paid a fee by the landowner. And because they got paid a fee, they're a farm labor contractor. They hired people and they got paid a fee. But you see the circularity. Any money you receive, anything valuable that you receive, if you're a farm labor contractor, counts as a fee. If you're a farm labor contractor, here we're trying to define who is a farm labor contractor. There must be some connection between the fee that's paid and the farm labor contracting activity defined in the statute. And the farming activities that are defined in the definition of agricultural employer, excuse me, agricultural employer, are in contradistinction to the farm labor contracting activities  So if you're getting a fee for being a farmer, you're not getting a fee for being a farm labor contractor. And you have to read this language with some sense of the history and the context and the structure of this statute. You have decades and decades of there being farmers, agricultural employers, there being agricultural workers that are trying to be protected, and you have these intermediaries. So part of your argument about that, about how this has gone on for so long like this, is that the Washington Department of Labor and Industries has never required licenses in this context. Is there any doctrine of deference under Washington law that we give to that sort of absence of action by the agency? What kind of box do we put that into? I think I would just, I mean I don't think there's a formal doctrine I have here. I think I would put it in the context of what an unprecedented reach was made by the district court here. And I do think in the context of applying a criminal statute and not just a civil one, that is particularly troubling. To adopt that new expanded scope. I thought Sutherland on statutory construction had a chapter on a long time understanding of a statute by an industry and regulators. You're right, your honor. And we do make arguments about the way that the regulations are written that we say support this interpretation. It came up in our case in Alaska stock. Yes, I'm not aware of any Washington law that expressly endorses that was my only point. I do think that you can look to the practice, you can look to the history here, you can look to the interpretations of the federal statute. There's a difference in the language, and I'm sure my friend on the other side is going to focus on that. The only thing I would say about that is the times they try to make it seem like we're arguing for the exact same rule under the federal statute to be adopted into the state statute even though the language is different. Under the federal statute, if you are an agricultural employer, you can never be a farm labor contractor. It doesn't matter what else you do. If you fit the definition of employer, you're out as a farm labor contractor. That is not our argument. Our argument is if you're a farmer hiring only for your own farm workers, you're not a contractor of any sort. You're really focused on this per acre fee then. Say they were getting two fees. One was some kind of reimbursement per employee and another one was per acre. I would put it this way. It's less about the fee and more about whether you're hiring for your own farm operations or you're hiring for someone else's farm operations. In other words, if Northwest, in addition to hiring their own agricultural workers, said, hey, we've got this great network of workers that we hire. Here's a neighboring farming operation. We'll hire your workers for a fee for that as well. They branched out and started doing more traditional farm labor contracting activity. At that point, I think under the Washington statute, they may very well be determined to be a farm labor contractor that has to have a license because they're doing their contracting. They're doing that hiring, not farm labor operations. They're a contractor at that point. You're saying under the federal system, as long as you have some farming business, you can have as many contracting businesses as you want? That's how you read the federal law? That's what you mean? Yes, absolutely. That's the history of the federal law, Your Honor. This is reproduced on page 59 of our brief, 29 U.S.C. 18027. The term farm labor contractor means any person other than an agricultural employer. It goes on to say, anybody who for any fee, valuable consideration paid, performs any farm labor contracting activity. Originally, an earlier version of the statute said, when you hire for your own operations. It got interpreted broadly by courts. Congress came back in, changed it to say, we concern ourselves only with those people that are hard to track down, these intermediaries that disappear after the season. Farmers are tied to the land. We can find them. We can enforce the law against them. NWMR is no longer in operation. Is that right? I'm sorry, Your Honor. NWMR is no longer in operation? As I understand it, that is correct. I think there is another farming operation that has many of the same people involved in it, but that company no longer exists. Am I right about that? No, I'm sorry. It exists. It's no longer farming at this time. Are they solvent? I can't speak to that. Yeah. I haven't addressed the knowing requirement. I'm happy to save it for time. I do understand that. Let me see if my colleagues have any questions. All right, thank you very much. Good morning. May it please the court, I am Lori Isley. With me today at council table is Andrea Schmidt. We represent the farm worker appellees. The fundamental flaw in the defendant's argument is that they fail to interpret knowingly  They fail to interpret knowingly  They fail to interpret knowingly in the full context of the joint liability provision. But we don't even get to that until we deal with these other statutory questions. Maybe you could start. I'd be more interested in the statutory questions first. Sure. With regard to the statutory question, because there's some ambiguity here. It's a difficult statutory interpretation on which we have no direct answer from the Washington court. Why doesn't the rule of lenity kick in to read it in the defendant's favor? Two questions here. With respect to the rule of lenity, that should not apply here, Your Honor. The criminal provisions of FLCA are not at issue in this case at all. And the case, the Ninth Circuit case, which the defendants rely on, the Leslie Salt case, in that case, the majority held you look at the underlying purpose of the statute. In that case, the Clean Water Act, you don't look to lenity because the criminal provisions of that statute were not at issue. I don't see how you could tease them out quite so easily. If you violate it civilly, you violate it criminally. And if, for example, you win this case, I would think some local DA might very well see a way to get a feather in his cap by putting some big boys in jail. I'm not aware, Your Honor, of any cases of criminal prosecutions under the Farm Labor Contractors Act. And what is at issue? There's no precedent for your position. So if you established one, then there might be. But here, in this case, the workers established two violations for which the trial court awarded statutory damages under the civil provisions of the Farm Labor Contractor Act. And there was a question from the panel with respect to the Perez-Farias decision. And in that case, our Washington Supreme Court unanimously decided the Farm Labor Contractors Act is an act that protects farm workers from exploitation. And therefore, the statute's entitled to a broad interpretation to ensure that result. What's your view on certification? We believe that this panel has sufficient, ample information from the Washington Supreme Court who unanimously and recently interpreted this statute to answer the questions before it today. Was that decision issued before you filed this case? Yes, it was, Your Honor. So if you're so confident that that's what Washington law means, why didn't you file this case in Washington court? So our clients had claims under both Washington law and federal law. We started in federal court. We probably would have been removed there anyway. At issue here today are only the state law claims, but the workers prevailed on summary judgment at the trial court level. The trial court felt that the law was clear and he could decide those questions. And the defendant's appeal, they could have brought this case before the Washington Supreme Court. They chose the forum in which to bring the appeal. And we think based on the state law that this court has the information about the Washington law in order to interpret the statute. Which Washington case do you think is decisive for you? The Perez-Farias case, Your Honor. And even though the court there was looking at a different provision, I think that analysis there is very helpful. There was a question about whether the court found the language was clear. And actually the Washington Supreme Court looked at the language regarding statutory damages, and what they successfully found is given that this is a statute intended to protect workers. I understand how Perez-Farias makes the defendants in this case farm labor contractors. Okay, let's turn to that issue. That I think is actually the easier of the statutory construction arguments before the court. The undisputed facts show that Northwest was a farm labor contractor it performed farm labor contracting activity, it employed agricultural workers, not disputed, and it did so for a fee. Well, that's where I run up against a problem. It seems perfectly clear, indisputable that their fee is on a per acre basis, not a per worker basis. Am I missing anything there? You are not, but what is very... What you think is, it doesn't matter whether the contracts, if I may, Your Honor, the contracts between the parties, the very first duty listed was for Northwest to hire and employ workers for Hancock's Orchards. Is there anything... That was... Is it disputed that the fee is on a per acre rather than a per worker basis? It is not. Okay, now, take my hypothetical case. They figure out some crop that can stand rough handling. I don't know, maybe potatoes you can grow this way, and they can be sown by machine and harvested by machine. The machines are real expensive and your yield may be a little lower, but you avoid a lot of lawsuits. Could they still get their per acre fee even though they didn't hire a single person? So there's nobody running the machines? They're run by computers? How would the machines be running? I happened to have visited a gold mine that works that way. Okay. Each hypothetical, I think, would require the fact finder to look at the definitions. Now, here, the key thing is the entity, Northwest, employed people to do the work. If the hypothetical is truly no one was employed... So if Old MacDonald has a farm in his hand, he's also a farm labor contractor. Okay. That raises a different issue that's actually not in front of the court today, but our Farm Labor Contractor Act has an exemption for people. It's called the single employer exemption, and they may employ their own workers. That does not apply here. And, in fact, that has not been argued on appeal, so the issue is waived. If you bring in workers to farm someone else's property, and that is John Hancock. The Old MacDonald example, if he owns the farm, he hires workers, he's not receiving a fee, right? Exactly. He would be covered under a specific exemption, which is not at issue here. What if Old MacDonald doesn't have fee simple absolute title to his farm? He's a tenant farmer and Old MacDonald has a duty to, has mutual duties between Old MacDonald and Peter, plantation owner. Old MacDonald gets a fee for the crops he turns over to Peter, and Old MacDonald has a hired hand. Is he a farm labor contractor? Probably you're not, not, Your Honor. And the, you know, each case would depend on the facts and applying the definition. The problem is that that's not the situation we have here. In fact, You said probably, so you mean there could be some facts where Old MacDonald, the tenant farmer, is a person subject to this act? The way parties structure their agreements as to what gets paid and how, all of those things may come into, you know, coming up with the appropriate answer to your question, Your Honor. I'm lost now. I don't see why it should be complex or fact dependent. What am I missing? If, if an entity agrees to do certain activities, including employing people, and is paid a fee for that, a concept which the panel has recognized is interpreted broadly. Are they getting a fee for employing people or for employing such people as they may find necessary? And it could be any number from zero to some high number. Which is it? Are they required to hire people? I'm not sure I'm following your question, Your Honor. I apologize. Well, I think that the question, if I understand it, goes to your definition of your plain language interpretation of the definition of farm labor contractor, right? Being defined as someone who for a fee performs labor contracting activities. Now, one way to read it, a pretty persuasive way to read it, was that the fee has to be tied to the farm labor contracting activities. And so, and so if you, for a fee, go out and recruit and hire workers to farm the land, then that's the situation contemplated by the statute. But if, under Judge Kleinfeld's example, the fee really isn't tied to employing workers or recruiting workers. It's just basically to farm it per acre. It doesn't really matter if it's one worker or a thousand workers. You get a fixed per acre fee. That fee is for farming the land generally. So does that still fit within the definition of the statute as you've argued it today? Yes. Here, under the specific facts of our case, they were paid a fee. It's correct. It was not a per capita fee. It was a fee per acre. And it included specified duties. The very first of those duties was to hire and employ workers such that the orchards could be farmed. That meets the definition of a farm labor contractor under the statute. Northwest employed workers and it did so for a fee. It was paid for doing that, for providing those workers to the farm. What subsection are you looking at of the contract? That is at ESR 38, Your Honor. Let me tell you what I'm worried about. I can imagine you set a precedent in this case and then some individual farmer, a tenant farmer is subject to the same law and virtually everybody who so much as brings in a hired hand is subject to your contracting laws interpreted in this case if you prevail. 38. Yes. And I'm looking at them. That's a bad site. That's in the order granting plaintiffs motion. I wanted to look at the document. I'm at the document, Your Honor. It's ESR 38. There are sealed records in this case, too. So this is ESR 38. It's the contract itself. Okay. I don't have ESR 38 in front of me right now. It's in the first volume that the appellant submitted under seal and it's subsection A. And it states that the manager that's Northwest will hire, employ, and supervise the work of all employees performing labor or services on the property. I've got the farm operating plan, management fee plan, and so forth. I guess you're citing something else. Are you in the section 19.2? Is that where it talks about farm operating plan, farm budget? Is that the page you're looking at? I'm actually looking at the orchard management agreement itself. I thought the court wanted to go to the place in the record right behind it. Right. I'm on the sealed excerpts of record 38, I think, and it's 19.2, 19.2A. Are those the sections you're looking at? Yes. That's in the master lease and management agreement. I'm actually looking at the orchard management agreement, which starts on ESR 37. It continues on ESR 38 and it's paragraph A, 3A, manager's duties. ESR 149. 149? ESR 149. Thank you. Where it says manager will hire employee discharge and supervise the work of all employees and independent contractors. Yes. If I may, another point- I hadn't read this as requiring them to hire people if they don't find it necessary, just that if somebody does have to hire people, it's their problem. Here, the Northwest actually hired hundreds of workers. There were over 600 workers in this case. The orchards could not have been farmed without a huge labor force and that is, in fact, what happened here. The defendants talk about the Mendoza case and the important thing there for the court to understand is that APA, unlike the federal law, specifically exempts agricultural employees from the definition of farm labor contractor. Washington law does not do that. Washington law does not exclude farm labor- I mean, agricultural employers from the definition of farm labor contractor and it's helpful on page 30 of our brief. It sets forth those- I'm sorry. Washington law specifically does not do so. Oregon also excludes agricultural employers from the definition of farm labor contractor but Washington does not do that. They are included.     required someone in this position to comply with the farm labor contract. It's not a requirement to comply with the farm labor contract. It's not a requirement to comply with the requirements before. Are you aware of the contrary? Yes. Actually, in this case, the Department of Labor and Industries required Northwest to get a license after our lawsuit brought to light the manner in which they were doing business and that is found in the workers excerpts of record WER 45. The head of Northwest states that the Department of Labor and Industries did not give them a license. And back to another question that was raised with the defendants, Northwest is defunct. They do not employ anyone. They have no insurance to cover the claims in this case. After one lawsuit, just like many other contracting entities, they had no ability to pay the judgment to the workers in this case. And that is specifically why Washington chose to have broader protections than the federal law and require entities like Northwest management to get a license and post a bond. So if there were violations of the law, there would be recourse for the workers. That did not happen here. If I may just turn briefly to knowingly. Can I get back to certification. Is there any reason not to certify? This is an important question. It's purely state   construction before the court today. We think again the court can decide this because the defendants interpretation of this provision would be contrary to the statutory scheme here which is to protect farm workers. It would basically create an incentive for farmers, employers, never to check whether or not an entity was licensed. That interpretation cannot be squared with the purpose of the statute which is to protect farm workers. I have a different question about damages if we get that far. The district court thought damages were per farm worker per year. The per year part seems to have come from once someone is hired, do they continue to be hired or are they rehired every year? I saw your evidence that there are some people who are hired every year but they seem to have some evidence that there are some people who are hired continuously. That seems like a fact dispute. The district court seems to have granted summary judgment for you on that issue. I'm not sure that's right. Can you address that? Yes. The vast majority of the class, over 500 of the class members were in fact only employed in one year. So they only get damages for one year period. That's correct. The reason there should be separate damages for each year are two fold. First, Northwest was required to have a license in each one of the years. So that is a separate violation for each year. The second violation is for failure to give very basic disclosures for each year. There is no way to disclose the length of the season unless you give the appropriate disclosures each year which lay out what the length of the season is going to be that particular year as well as all the other provisions. For example, if the minimum wage goes up, what the wage rate is going to be. For those reasons, because disclosures have to be given each year, it is a separate violation for each year in which those disclosures were not in fact given. Thank you very much for your argument both sides. Do we have any time left on the clock? All right. It is a good thing I talk fast. I will be very brief. Thank you for your patience today. Let me start with this rule because I want to tie it down. There is no doubt that the rule should apply here and the state itself recognizes that when you have a provision that has both civil and criminal implications that you have to apply the rule. In terms of how you define the fee, there is reference to the single employer exception. We haven't claimed that that applies here because we don't think the farmer here was an employee of the owner and the lessee. But it defines the nature of the fee that gets you in or out of that exception as being a fee that is determined by the number of workers recruited. By analogy, we think that same kind of idea should apply generally to the single employer exception. I think there is support under state law for the failure to    continuing violation, not separate violations, and that these exceptions should be defined as a single employer exception that is  not  single employer exception. Let me just end with two quick points. One, we're talking about contractors and the state supreme court said these are intermediaries between employers and employees in the agricultural context. There is only one agricultural employer in this case and it is Northwest. It can't be a contractor for itself. That just makes no sense. No one construed the statute that way. It's inconsistent with the definition of contractor and it's inconsistent with the state supreme court's statement in Perez that it's an intermediary between employers    inconsistent with the definition of contractor and it's inconsistent with the state supreme court's statement in Perez that it's an intermediary between employers and employees. It's inconsistent with the state supreme       entrepreneurs and employers. That's it. Thank you. Do we understand the argument? You're well over time, but the matter is submitted for a decision and we thank both sides for your arguments today.
judges: Kleinfeld, Nguyen, Friedland